Rel: May 19, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

————————————————

### SC-2022-0821

————————————————

## Ammons Properties, LLC

## v.

## Andrew William Spraggins

### Appeal from Madison Circuit Court
### (CV-20-901102)

MITCHELL, Justice.

Andrew William Spraggins's driveway crossed a neighboring tract

of land owned by Ammons Properties, LLC ("Ammons").  After a dispute

arose between Spraggins and Ammons, Spraggins filed a complaint asking the Madison Circuit Court to enter a judgment declaring that he had an easement for the portion of his driveway that crossed Ammons's property. Ammons filed a counterclaim alleging that Spraggins was liable for several tortious acts. Following a bench trial, the circuit court ruled that Spraggins had an easement across Ammons's property and denied Ammons's counterclaims. Ammons appealed. We affirm the judgment.

Facts and Procedural History

In 1991, Billy R. Webster ("Billy") acquired 7.51 acres of land ("the Webster property") on the west side of Bell Factory Road, a public road in Madison County. The Webster property consisted of three contiguous tracts: a southern tract, a middle tract, and a northern tract. Four years later, Billy died.

In the ensuing years, Billy's estate distributed the tracts to various members of the Webster family. Charles B. Webster ("Charles") acquired the middle tract in 2009. He took out a loan secured by a mortgage on the property that same year. Two years later, Charles's sons acquired the southern and northern tracts.

In 2017, Charles defaulted on the loan for the middle tract, and the tract was sold to Spraggins at a foreclosure sale. Before purchasing the middle tract, Spraggins inspected and obtained a survey of the entire Webster property. The survey included a note stating: "These three tracts all belonged to [Billy] Webster and the driveways served multiple houses. [The middle tract] uses the drive that crosses [the northern tract]." The driveway across the northern tract was paved; the southern tract contained a gravel driveway that also accessed the house that sat on the middle tract.

Two years after the foreclosure sale, Ammons purchased the southern and northern tracts from members of the Webster family. The sole member of Ammons, Scott Ammons ("Scott"), testified that, soon after purchasing the land, he began clearing the southern tract for development and placed a chain across the gravel driveway located on the southern tract. He had the property surveyed and began construction.

In August 2020, Spraggins filed a complaint in the Madison Circuit Court asking the court to "establish and declare the right-of-way easements over and across the property of the Defendant, Ammons

3

Properties, LLC, … as being, alternatively, an easement of necessity or an easement by implication, having existed and then utilized by parties occupying the property of the Plaintiff." Ammons counterclaimed for damages based on theories of trespass, private nuisance, and outrage. After a bench trial, the circuit court entered a judgment holding that Spraggins had "an easement for ingress and egress over and across the property belonging to [Ammons] described as and referred to during trial as Tract 2, being the northern most property and currently containing an asphalt driveway." The circuit court denied "[a]ll claims not specifically addressed" in the judgment, including Ammons's counterclaims. Ammons filed a "Motion for Reconsideration, and to Alter, Amend, or Vacate" the judgment, which was deemed denied because the circuit court did not rule on it within 90 days. See Rules 59(e) and 59.1, Ala. R. Civ. P. Ammons appealed.

## Standard of Review

"'"When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error."'" Kennedy v. Boles Invs., Inc., 53 So. 3d 60, 67-68 (Ala. 2010)

4

(citations omitted). But "'that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.'" Id. at 68 (citation omitted).

## Analysis

Ammons raises what he says are three grounds for reversal: (1) the circuit court did not have jurisdiction to grant an easement to Spraggins, and, if it did, Ammons was owed compensation for the easement; (2) the evidence at trial did not support an easement in favor of Spraggins; and (3) the circuit court erred by declining to award damages to Ammons on its counterclaims against Spraggins. Because Ammons does not demonstrate reversible error on any of these grounds, we affirm.

### A. The Circuit Court Had Jurisdiction and Ammons Is Not Due Compensation

Ammons first argues that the judgment of the Madison Circuit Court is void because Spraggins did not initiate the action in the Madison Probate Court. Ammons notes that a landowner seeking to condemn a right-of-way over neighboring land must apply "to the probate court of the county in which the lands over which such right-of-way is desired." § 18-3-3, Ala. Code 1975. Because § 18-3-3 does not give the circuit court

5

jurisdiction to condemn a right-of-way over neighboring property, Ammons argues, the circuit court's order is void.

Ammons is correct that, in the absence of an existing right-of-way to a public road, the owner of a landlocked tract may petition the county probate court to condemn a right-of-way across a neighboring tract. § 18-3-1 and § 18-3-3. But that is not the only way a landowner without access to a public road can obtain it. Relevant here, an easement by necessity may be implied when the owner of two tracts of land, one of which requires the use of an existing right-of-way over the other, conveys the tract that benefits from the right-of-way. See Burrow v. Miller, 340 So. 2d 779, 780 (Ala. 1976) (explaining that an easement can arise even when a conveyance is "not an express conveyance of the easement in question but the deed to the property to be served by the claimed easement" because a landowner who conveys property "'also conveys whatever is necessary to its beneficial use'" (citation omitted)).

In his complaint, Spraggins asked the circuit court to "establish and declare the right-of-way easements over and across the property of the Defendant," either as "an easement by necessity or an easement by implication, having existed and then utilized by parties occupying the

6

property of the Plaintiff." Because Spraggins sought legal recognition of an existing easement and not the condemnation of a new right-of-way, § 18-3-3 did not restrict jurisdiction over the action to the probate court. Accordingly, Ammons has not shown that the circuit court's judgment is void for want of jurisdiction.

In the alternative, Ammons argues that "[t]he trial court was additionally in error for awarding such an easement without due compensation to Ammons." Ammons's brief at 27. Ammons notes that a person seeking to condemn a "'right-of-way must pay the owner of the land across which the right-of-way is taken "the value of the land taken and compensation for damages to the land."'" Id. at 24 (quoting Ally Windsor Howell, Tilley's Alabama Equity § 17:4 (5th ed. 2012)). But, as explained above, Spraggins asked the circuit court to declare an existing easement, not to condemn Ammons's property. Therefore, Ammons was not owed compensation.

### B. Ammons Has Not Shown that Declaring an Easement Was Erroneous

Ammons next argues that there was insufficient evidence for the circuit court to declare the existence of an easement. An easement is a nonpossessory interest in land that can be created in several ways,

7

including by (1) deed, (2) prescription, (3) adverse use for a statutory period, (4) express conveyance, (5) reservation or exception, (6) implication, (7) necessity, (8) contract, or (9) reference to boundaries or maps. Cleek v. Povia, 515 So. 2d 1246, 1247 (Ala. 1987). In his complaint, Spraggins asked the circuit court to declare an easement by necessity or by implication. The circuit court issued a judgment declaring an easement in favor of Spraggins, but it did not specify which type of easement -- by necessity or by implication -- Spraggins had. Because Ammons fails to show that the circuit court's judgment implicitly declaring an easement by necessity was plainly and palpably wrong, we can affirm on that basis. We address each of Ammons's evidentiary arguments below.

### 1. The Driveway

Ammons first argues that Spraggins could not have an easement by necessity because "Spraggins had the ability to construct his own driveway on [the middle tract], but chose not to do so." Ammons's brief at 32. In making this argument, Ammons contends that, because it built a driveway over land on the southern tract that was virtually identical to

8

an adjacent portion of the middle tract, Spraggins had no real need for a right-of-way over Ammons's property.

When a landowner conveys a tract of land, an easement by necessity arises on the adjacent tract when (1) the conveyor owned both tracts immediately before the conveyance and (2) a right-of-way over the adjacent tract is the sole practical means of ingress and egress for the tract conveyed. See Burrow, 340 So. 2d at 780. Consequently, as Ammons notes, "[i]f there are other reasonably practical ways of ingress and egress over complainant's property, then no easement over the defendants' lots may be implied. That it might be more convenient or less expensive does not serve to raise the implication of such quasi easement." Crawford v. Tucker, 258 Ala. 658, 661, 64 So. 2d 411, 413-14 (1952).

At trial, Spraggins's expert testified that, based on his assessment of two areas of the middle tract, Spraggins could not safely construct a driveway to Bell Factory Road. But, as Ammons points out, Spraggins's expert did not assess the portion of the middle tract adjacent to Ammons's driveway on the southern tract. Nor, Ammons notes, did Spraggins present evidence of the cost of a driveway. Accordingly, Ammons reasons

9

that Spraggins failed to show that he could not reasonably construct his own driveway for ingress and egress over the middle tract.

But Spraggins's expert, after viewing a video of Scott driving his vehicle on the driveway Ammons had built, also testified that Ammons's driveway was unsafely steep. Therefore, the circuit court could have reasoned that a similar driveway over the adjacent part of the middle tract would likewise be unsafe. For that reason, it was not plainly and palpably wrong for the circuit court to accept the expert's testimony that there was no safe way for Spraggins to build a driveway over the middle tract.

## 2. The Effect of the Prior Foreclosure on the Middle Tract

Ammons next argues that any easement benefiting the middle tract was extinguished when the middle tract was foreclosed on in 2017. Ammons points out that Charles mortgaged the middle tract in 2009. Ammons also maintains that, assuming there was an easement by necessity, such easement could have arisen only when Charles's sons acquired the southern and northern tracts in 2011. Because Charles mortgaged the middle tract two years before Ammons says any easement

10

could have arisen, Ammons contends that the 2017 foreclosure necessarily extinguished the easement.

Ammons supports this argument by citing Alabama Historical Commission v. City of Birmingham, 769 So. 2d 317, 320 (Ala. Civ. App. 2000). In that case, an easement encumbered a tract of land that had previously been mortgaged. Id. The Court of Civil Appeals held that foreclosure of the mortgage extinguished the easement because the easement was established after the tract had been mortgaged. Id. Indeed, "the general rule is that the foreclosure of a mortgage terminates an easement that is recorded after the mortgage, subject only to the junior easement holder's right to redeem under § 6-5-248, Ala. Code 1975." Id.

But an easement encumbers the servient, not the dominant, tenement. See Oates v. Town of Headland, 154 Ala. 503, 505, 45 So. 910, 911 (1908) ("'An easement is an interest in land … conferring a right upon the owner thereof to some profit, benefit, dominion, or lawful use out of or from the estate of another.'" (citation omitted)). Accordingly, for a foreclosure to extinguish an easement, the foreclosed property must be the servient tenement. Here, the easement consisted of a right-of-way

11

over the northern tract, which was thus the servient tenement. Therefore, foreclosure of the mortgage on the middle tract did not extinguish the easement.

### 3. Whether Spraggins Knew of an Easement

Ammons further contends that an easement by necessity could not have arisen because "Spraggins knew an easement did not exist based on his inspection and his survey." Ammons's brief at 29; cf. Crawford, 258 Ala. at 661, 64 So. 2d at 414 (holding that a landowner did not have an easement over his neighbor's land when "[t]he driveway was open and visible when complainant purchased his property; he knew his conveyance did not grant any right of way or easement over the remainder of the property, and accepted it without any reservation or grant of an easement"). Ammons points to several pieces of evidence to support its position.

First, Spraggins inspected the Webster property and had it surveyed. Ammons contends that a note in the survey containing the statement that "[t]hese three tracts all belonged to [Billy] Webster and the driveways served multiple houses" put "Spraggins on notice that the driveways existed for the sole owner of the [Webster property], not him."

12

Ammons's brief at 31. But, after the excerpt quoted by Ammons, the survey note continues: "[The middle tract] uses the drive that crosses [the northern tract]." The full note, therefore, could reasonably indicate that the driveway over the northern tract was for the benefit of the middle tract regardless of who its owner was. Thus, the circuit court could properly have found that the survey note supports the existence of an easement for the benefit of the middle tract.

Second, Ammons argues that Spraggins was on notice that there was no easement because, though he knew of the driveway over the northern tract, he "never raised any questions about how he was going to get to the property when he bought it." Id. But Ammons points to no authority showing that the existence of an easement by necessity depends on an inquiry by the purchaser of the dominant tenement. Indeed, Spraggins's failure to ask this question could indicate that Spraggins had no reason to doubt that an easement existed. Accordingly, this fact does not establish a lack of knowledge on Spraggins's part.

Nor do the other pieces of evidence highlighted by Ammons, many of which show only that Spraggins did not have an express easement. For instance, Ammons points to (1) the lack of a "grant in the deed from

13

the adjacent property of use of the driveway"; (2) testimony that the owners of the northern tract never offered or issued Spraggins an easement; (3) Spraggins's failure to offer to buy an easement; and (4) testimony that Spraggins's use of the driveway crossing the northern tract would have been without permission. Id. at 31-32. None of this evidence indicates that the circuit court was plainly and palpably wrong about the existence of an easement by necessity -- which is implied, not express. Ammons thus does not prevail on this issue.

### 4. Landlocked Property

Ammons also disputes the circuit court's judgment on the ground that "an owner who has a way of access through his own land cannot impose a way of necessity across the lands of a neighbor unless his own way is not reasonably adequate, or the use of it is prohibitively costly." Ammons's brief at 24 (citing 1 Jesse P. Evans III, Alabama Property Rights and Remedies § 40.12, at 795 (2d ed. 1999)). Ammons notes that "'a landlocked owner is not entitled to condemn a right-of-way across adjoining land, if the landlocked landowner has an existing, reasonably adequate means of access to his land, or if he could construct such an access without prohibitive expense.'" Id. (quoting Tilly's Alabama Equity

14

§ 17.4) (emphasis omitted). Because the middle tract abutted Bell Factory Road, Ammons argues that the middle tract was not landlocked and, thus, that Spraggins had reasonably adequate access to his property.

But, in making this argument, Ammons again confuses an action to declare an existing easement with an action to condemn a new right-of-way. Spraggins sought neither to impose nor to condemn a new right-of-way; yet Ammons relies on treatises addressing only those circumstances. Because Ammons fails to demonstrate that an easement by necessity can arise only when the dominant tenement is landlocked, Ammons has not shown that the circuit court erred by holding that Spraggins had that type of easement. Therefore, the circuit court's judgment is not due to be reversed on this issue.

C. Ammons Did Not Prove Its Counterclaims

Ammons finally argues that the circuit court erred by denying its counterclaims alleging trespass, private nuisance, and outrage. We disagree.

15

1. Trespass

"[T]o be liable to another for trespass, the person must intentionally enter upon land in the possession of another or the person must intentionally cause some 'substance' or 'thing' to enter upon another's land." Born v. Exxon Corp., 388 So. 2d 933, 934 (Ala. 1980). A plaintiff may recover compensatory damages by showing harm "'caused by any act alone, activity carried on, or condition created by the trespasser, irrespective of whether his conduct is such as would subject him to liability were he not a trespasser.'" Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 62, 300 So. 2d 94, 100 (1974) (citation omitted).

Ammons first argues that the circuit court should have awarded it damages because "Spraggins admitted to breaking a chain so Spraggins could drive through [the southern tract] to his house" and because "Spraggins also admitted to pulling up construction survey stakes so that he could freely cross [Ammons's] property as he pleased." Ammons's brief at 36. Ammons states that the circuit court "heard testimony from [Scott] that the home construction surveyors had to come to the property on three (3) occasions." Id. Scott testified that the additional surveys cost "about six hundred dollars."

16

But, in its opening brief, Ammons never states which alleged act of trespass -- breaking the chain or pulling up the stakes -- required the survey to be repeated. Indeed, additional surveying could have been required for a host of reasons that would not impose legal liability on Spraggins -- for instance, survey errors or lost documentation. And the sole evidence Ammons presented to support its claim for trespass damages was Scott's testimony, which the judge as fact-finder need not have credited. Cf. Tutor v. Sines, [Ms. 1210037, Feb. 17, 2023] ___ So. 3d ___, ___ (Ala. 2023) ("[T]he jury would have been justified in discounting Tutor's testimony as self-serving."). Consequently, Ammons has not shown that its alleged injury was caused by trespass.

Ammons also argues that the circuit court should have awarded damages for trespass because "Spraggins admitted that his actions broke the windshield of [Ammons's] 1989 Buick, which was a custom windshield which cannot be replaced." Ammons's brief at 40. Although Ammons acknowledges that proving trespass requires showing that the defendant "'intentionally entered'" another's property without the owner's consent, he fails to point to any evidence showing that Spraggins intentionally entered Ammons's property when he broke Scott's

17

windshield. Id. at 35 (quoting 2 Alabama Pattern Jury Instructions -- Civil, Instruction 31A.00 (3d ed. 2019)). To the contrary, Spraggins gave unrebutted testimony that he broke the windshield unintentionally when, while he was "turning [his] long van in that driveway," the van kicked up a loose rock that hit the windshield of Scott's vehicle, which was parked on the northern tract. The circuit court could have reasonably found that Spraggins's reference to "that driveway" was to the asphalt driveway over which Spraggins had an easement because the asphalt driveway crossed the northern tract. Therefore, Ammons has failed to demonstrate reversible error on its counterclaim for trespass.

## 2. Private Nuisance and Outrage

Ammons faces a similar causation issue with its claims of private nuisance and outrage. Ammons argues that several of Spraggins's actions "constituted a nuisance" and were an "outrage," including (1) "engag[ing] in confrontational acts" with Scott; (2) parking "numerous vehicles on [the southern tract] to prevent [Scott] from accessing the property"; and (3) "threaten[ing Scott] should he not be able to trespass across [the northern tract] and use Ammons's asphalt driveway." Ammons's brief at 38-39. Ammons asserts that these actions "caused

considerable construction delays to Ammons," during which time the price of lumber rose "from $4,000 to $28,000." Id. at 39-40. But Ammons does not point to any evidence showing a causal link between the alleged acts and the construction delays. Therefore, Ammons has failed to show that the circuit court made a reversible error when it denied Ammons's claims of private nuisance and outrage.

## Conclusion

Because Ammons has not demonstrated that the circuit court erred by granting Spraggins an easement or denying Ammons's counterclaims, we affirm.

AFFIRMED.

Parker, C.J., and Shaw, Bryan, and Mendheim, JJ., concur.